IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BRAD A. KVACH,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-0034

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *A.*   *Kvach's Education and Employment Background* . . . . . . 5
     *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . 5
         *1.*   *Kvach's Testimony* . . . . . . . . . . . . . . . . . . 5
         *2.*   *Vocational Expert Testimony* . . . . . . . . . . . . . 6
     *C.*   *Kvach's Medical History* . . . . . . . . . . . . . . . . . . . . . 8

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . 12
     *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . 12
     *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . 14
         *1.*   *RFC Assessment* . . . . . . . . . . . . . . . . . . . 14
         *2.*   *Credibility Determination* . . . . . . . . . . . . . . 17
     *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . 20

VI.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Brad A. Kvach on April 4, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Kvach asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Kvach requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On September 9, 2009, Kvach applied for disability insurance benefits. In his application, Kvach alleged an inability to work since July 1, 2007 due to a series of back problems. Kvach's application was denied on February 5, 2010. On May 17, 2010, his application was denied on reconsideration. On July 14, 2010, Kvach requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 11, 2011, Kvach appeared via video conference with his attorney before ALJ Tom L. Morris for an administrative hearing. Kvach and vocational expert Julie A. Svec testified at the hearing. In a decision dated December 12, 2011, the ALJ denied Kvach's claim. The ALJ determined that Kvach was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing his past relevant work as a telecommunications engineer. Kvach appealed the ALJ's decision. On February 4, 2013, the Appeals Council denied Kvach's request for review. Consequently, the ALJ's December 12, 2011 decision was adopted as the Commissioner's final decision.

On April 4, 2013, Kvach filed this action for judicial review. The Commissioner filed an Answer on July 17, 2013. On August 22, 2013, Kvach filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a

telecommunications engineer. On November 18, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 1, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

3

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kvach's Education and Employment Background

Kvach was born in 1964. He is a high school graduate. After high school, he completed a two-year program in computer studies at Kirkwood Community College in Cedar Rapids, Iowa.

The record contains a detailed earnings report for Kvach. The report covers the time period from 1980 to 2010. Kvach had minimal earnings in 1980 (less than $625). From 1981 to 2007, he earned between $1,201.98 (1983) and $45,961.69 (1997). In 2008, he earned $21.25, and in 2009, he earned $1,865.00. He has no earnings since 2010.

### B. Administrative Hearing Testimony

#### 1. Kvach's Testimony

At the administrative hearing, Kvach's attorney asked Kvach to describe his past work as a test engineer. Kvach responded that his work as a test engineer involved moving and setting up computer and scanning equipment, and testing the equipment or programs involved with the equipment. Kvach estimated that the equipment he worked with and needed to lift weighed between 10 and 70 pounds. He also stated that his job required about 70% standing and 30% sitting. When asked whether he could still perform that type of work, Kvach testified that he could not perform such work because he could no longer lift heavy equipment, and both sitting and standing caused him low back and leg pain.

Next, Kvach's attorney asked Kvach to assess his level of pain:

> Q: Okay. And if you're going to describe the low back pain that you've already described as far as the pain level, on a zero-to-10 pain scale where does it fall --
>
> A: I wake up at the morning and I'm usually around a 7. . . .
>
> Q: And do [you] use pain medications?

| A: | I do use pain medication.  I take eight Gabapentin a day, which is 2,400 milligrams.  That is the maximum dosage, and that is a muscle relaxer that does help me have a little more mobility.  Without that, I wouldn't be able to walk or stand or sit very long. |
| --- | --- |
| Q: | All right.  Are you taking any other pain medications? |
| A: | I take Tramadol.  Tramadol is for pain.  It works very well, but it makes me a zombie. |
| Q: | So the side effects -- |
| A: | The side effects are horrible.  I can't do nothing when I take that, but I do have some relief. |
| Q: | And so does it go from a 7 to some lower number? |
| A: | Roughly about a 5. |

(Administrative Record at 35-36.) Kvach further testified that he does not let his pain level get over an 8 because the two times that has happened, he has "ended up in the emergency room."[1]

Kvach also testified that other than relief from pain medication, his other course of relief is to lie on his side.  When lying on his sides during the day, Kvach stated that he does not sleep.  According, to Kvach he only gets two to three hours of continuous sleep at night.  After about three hours of sleep, Kvach testified that "I go into what I call rolling.  Rolling is when I switch from side to side.  As I said, I cannot sleep on my back or front.  Then at that time I go into sleeping in 15- to 20-minute naps and continually roll from side to side."[2]

### 2.   Vocational Expert Testimony

At the hearing, the ALJ provided vocational expert Julie A. Svec with a hypothetical for an individual who is limited to:

---

[1] Administrative Record at 40.

[2] Administrative Record at 37.

> light work, except occasional climbing ramps, stairs,
> balancing, stooping, kneeling, crouching, crawling, never
> climbing ladder[s], ropes, or scaffolds.

(Administrative Record at 47.) The vocational expert testified that under such limitations, Kvach could perform his past work as a telecommunications engineer, software engineer, and test engineer. In the alternative, the vocational expert also testified that Kvach could perform the following light work: (1) file clerk (5,000 positions in Iowa and 275,000 positions in the nation), (2) order-filler (2,000 positions in Iowa and 400,000 positions in the nation), and (3) distribution clerk (1,000 positions in Iowa and 400,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical for an individual who is limited to:

> sedentary work, except [the individual can only] lift and carry
> occasionally five pounds, frequently five pounds, walk no
> more than 30 minutes before having to sit, able to alternate
> between sitting and standing as needed without leaving the
> work area, and no unprotected heights.

(Administrative Record at 48.) According to the vocational expert, such limitations would preclude Kvach from performing his past relevant work or any other competitive employment. Specifically, the vocational expert stated that the five pound lifting limitation would exclude Kvach from any work because the ability to perform sedentary work requires a worker "to have the ability to lift 10 pounds on an occasional basis."[3] Returning to the first hypothetical, the ALJ inquired whether adding the additional limitation of missing two days from work per month to that hypothetical would allow for Kvach to be employed. The vocational expert testified that missing two days of work per month under the first hypothetical would preclude Kvach from competitive employment.

---

[3] Administrative Record at 48-49.

Kvach's attorney also questioned the vocational expert. Kvach's attorney inquired whether under either the ALJ's first or second hypothetical, Kvach could find employment with the following additional limitations: (1) sit occasionally, (2) stand occasionally, and (3) walk occasionally. The vocational expert testified that "I don't believe work would be possible."[4] Kvach's attorney also inquired whether an individual who needed to lie down up to one-third of an eight-hour workday would be employable. The vocational expert responded that such an individual could not find competitive employment. Lastly, Kvach's attorney asked about the employability of an individual who needed to work at a slow pace for up to one-third of an eight-hour workday, and needed frequent rest breaks throughout the workday. The vocational expert testified that such limitations would preclude competitive employment.

## C. Kvach's Medical History

In 2000, Kvach met with doctors at Physician's Clinic of Iowa, P.C., complaining of back pain and left leg pain. An MRI showed "very definite" L4-5 disc protrusion with left-sided root impingement. Kvach was diagnosed with lumbar spondylosis with a herniated disc. He underwent L4-5 microdiscectomy surgery to treat his back and leg pain. By March 2000, Kvach was "doing very well," and had returned to work.

In 2005, an MRI of Kvach's spine showed a recurrent left-sided paracentral disc herniation at L4-5. In October 2006, Kvach had another spinal MRI. The MRI showed a large right-sided disc herniation at C5-6, smaller disc bulges on the right at C6-7, and right-sided disc protrusion at T3-4. In early November 2006, Dr. Loren J. Mouw, M.D., recommended surgery to repair the herniated disc at C5-6. Kvach underwent a discectomy at C5-6 on November 29, 2006. On January 23, 2007, Kvach had a follow-up appointment with Dr. Mouw, and indicated that he had "no complaints." Dr. Mouw

---

[4] *Id.* at 50.

concluded that "[s]ince he is symptom free, I would not recommend anything else. . . . He can resume his activities with the exception of high impact activities for one year."[5]

On June 23, 2009, Kvach met with Dr. Ronald W. Miller, M.D., complaining of chronic low back pain. In his notes, Dr. Miller described Kvach's situation as follows:

> His current situation is that he has intractable debilitating low back pain. He says that he has had 3 recent jobs that he was forced to quit because he could not handle activity secondary to exacerbation of severe low back pain. Any type of prolonged standing, movement, etc. produces severe incapacitating pain. He is not interested in the use of any pain medication for this. He feels he would simply be covering up the problem. He might in the circumstances of that produce further back problems or damage. He reports that he really cannot do anything at home but lie down and sit.

(Administrative Record at 263.) In examining Kvach, Dr. Miller found that he: (1) moved about "fairly" well; (2) had good strength and range of motion; and (3) had normal joints. Dr. Miller diagnosed chronic lower back pain, hypertension, hyperlipidemia, and depression with anxiety. Dr. Miller noted that "[i]t seems rather odd to me that he does not wish to try any pain medication for this."[6] Dr. Miller referred Kvach to Dr. James R. LaMorgese, M.D., for a more comprehensive evaluation of his back problems.

On June 26, 2009, Kvach met with Dr. LaMorgese regarding low back and right leg pain. In discussing Kvach's pain, Dr. LaMorgese noted that:

> [Kvach] indicates that he has only been able to work 7-1/2 weeks over the last 3 years because of his right-sided back pain and pain into the right leg. The pain is predominantly right-sided in the back with secondary pain into the leg that is

---

[5] Administrative Record at 306.

[6] *Id.* at 264.

> more of an aching sensation, although he can get jolts of pain.
> [Kvach] has tried tramadol in the past for his pain, but does
> not like taking that medication and is not taking any right now.
> He has had multiple epidural cortisone injections, the last in
> March 2009. The epidurals are only lasting weeks at a time
> now rather than prolonged relief from his symptoms.

(Administrative Record at 334.) Kvach rated his pain at 2 to 7 on a scale 0 to 10, with 10 being the highest level of pain. He also reported some sleep disturbance and an inability to work due to pain resulting from activity. Upon examination, Dr. LaMorgese noted that Kvach had "very significant tenderness at the posterior iliac spine and along the iliac crest and just below the crest on the right. [Kvach] had marked restricted range of motion in the low back due to pain, especially forward flexion extension and lateral flexion to the right."[7] Dr. LaMorgese diagnosed Kvach with lumbar radiculopathy L4-5 on the right with residual symptoms on the left.

On August 25, 2009, Kvach returned to Dr. Mouw complaining of back pain with radiation into his right leg. Dr. Mouw noted that "[p]rolonged positions and certain activities increase his pain. Changing positions helps. He has undergone multiple [epidural steroid injections] and has been under chronic pain management[.]"[8] An MRI of the lumbar spine showed degenerative changes with a bulge at L4-5 and annular tear. Dr. Mouw diagnosed Kvach with chronic back pain. Dr. Mouw opined that "I would not recommend surgical intervention at this time. I believe a conservative approach is appropriate."[9]

---

[7] Administrative Record at 335.

[8] *Id.* at 306.

[9] Administrative Record at 306.

On December 29, 2009, Disability Determination Services ("DDS") referred Kvach to Dr. George T. Kappos, M.D., for a consultative examination. In discussing his current symptoms, Dr. Kappos noted:

> [Kvach] reports current symptoms of constant aching pain in the lumbar area that never goes away. He occasionally will have a pulsar pain that will spike down the spine and tailbone and travel down the right leg to his foot. He also complains of pain in the right upper hip with a constant stabbing pain and pain in the right and left buttocks. He states that this is a constant aching sensation, which occasionally increases during sleeping and when sitting and standing and walking. He complains of constant aching and sometimes burning sensation in the right leg. He feels that his leg is unstable and limps on the right leg as pain increases. He also reports constant aching pains and pins-and-needles sensation in this right foot up to the right calf after standing from a sitting position. Standing and walking too long will cause this sensation also. . . . He reports that his pain varies from a level of 3/10 to 9/10 out of a 10.0 scale and his average pain is 5-6/10. The pain is increased by lifting, pushing, pulling, squatting, bending, standing, walking , sitting, kneeling, reclining, climbing stairs, carrying and twisting. He takes medication to help the pain. He has found no activities that help the pain.

(Administrative Record at 319-320.) Upon examination, Dr. Kappos opined that Kvach could: (1) occasionally lift, push, pull, and carry 25 pounds; and (2) occasionally sit, stand, walk, stoop, bend, crawl, kneel, and climb ladders. According to Dr. Kappos, Kvach's limitations were due to neck and back pain.

On January 28, 2010, Dr. C. David Smith, M.D., reviewed Kvach's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Kvach. Dr. Smith determined that Kvach could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with

normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Smith also determined that Kvach could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Dr. Smith found no manipulative, visual, communicative, or environmental limitations.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kvach is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ

determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Kvach had not engaged in substantial gainful activity since July 1, 2007. At the second step, the ALJ concluded from the medical evidence that Kvach had the following severe impairment:

degenerative disc disease of the lumbar spine, status post lumbar and cervical surgery. At the third step, the ALJ found that Kvach did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kvach's RFC as follows:

> [Kvach] has the residual functional capacity to perform light work . . . except that [he] could lift 20 pounds occasionally and ten pounds frequently. He can stand and walk six hours out of an eight hour day. He can [sit] six hours out of an eight hour day. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He can never climb ladders, ropes or scaffolds. [10]

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Kvach was capable of performing his past relevant work as a telecommunications engineer. Therefore, the ALJ concluded that Kvach was not disabled.

### B. Objections Raised By Claimant

Kvach argues that the ALJ erred in two respects. First, Kvach argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include all of his functional limitations in the RFC assessment, in accordance with the opinions of Dr. Kappos, a consultative examining doctor. Second, Kvach argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. RFC Assessment

Kvach argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of his functional limitations.

---

[10] In his decision, at step four (Kvach's RFC), the ALJ repeats the sentence "He can stand and walk six hours out of an eight hour day." *See* Administrative Record at 13. Both parties agree that this is a typographical error, and the second sentence should read "[h]e can *sit* six hours out of an eight hour day." *See* Commissioner's Brief (docket number 13) at 20; Kvach's Brief (docket number 11) at 11, n.5. Accordingly, the Court has adjusted the sentence above to correct the ALJ's typographical error.

Kvach further asserts that when determining his RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations caused by his back and neck pain, including the opinions of an examining doctor. Specifically, Kvach argues that the ALJ's RFC assessment is inconsistent with the opinions of Dr. Kappos, a consultative examining doctor, who limited Kvach to occasional standing, walking, and sitting. Kvach contends that occasional standing, walking, and sitting limits him to doing each of those activities for 2-3 hours in an eight-hour workday, not 6 hours in an eight-hour workday as the ALJ determined in his RFC assessment. Kvach maintains that this matter should be remanded for further development of his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial

proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In considering the medical evidence, the ALJ gave "significant weight" to the opinions of Dr. Kappos, a consultative examining doctor.[11] In his decision, the ALJ also noted that Dr. Kappos opined that Kvach "could occasionally sit, stand, walk, stoop, bend, crawl, kneel, walk on uneven surfaces, climb ladders and use his lower extremities."[12] In SSR 83-10, the Social Security Administration defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251 (1983) at *5. The ability to only occasionally sit, stand, and walk, limits a claimant to sitting 2-3 hours in an eight-hour workday, standing 2-3 hours in an eight-hour workday, and walking 2-3 hours in an eight-hour workday. Such limitations are inconsistent with the ALJ's RFC assessment for Kvach, which provides that Kvach is capable of sitting 6 hours in an eight-hour workday, and standing/walking 6 hours in an eight-hour workday. The ALJ offers no discussion or explanation for his determination that Kvach is capable of sitting 6 hours in an eight-hour workday, and standing/walking 6 hours in an eight-hour workday.

---

[11] In his decision, the ALJ incorrectly refers to Dr. Kappos as Dr. Kuhnlein. *Compare* Administrative Record at 15-16 (ALJ's decision) and Administrative Record at 319-324 (Dr. Kappos' consultative examination report).

[12] Administrative Record at 15.

Moreover, the ALJ provides no evidence to support such a finding. Because the ALJ gave Dr. Kappos' opinions "significant weight," but disregarded Dr. Kappos' sitting, standing, and walking limitations without explanation, the Court believes that remand is necessary. Accordingly, on remand, the ALJ must fully and fairly develop the record with regard to Kvach's sitting, standing, and walking limitations, especially as they relate to Dr. Kappos' opinions and his RFC. *See Cox*, 495 F.3d at 618.

### 2. Credibility Determination

Kvach argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Kvach maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Kvach's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned
> finds that [Kvach's] medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, [Kvach's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 14.)

In his decision, the ALJ sets forth the law for making a credibility determination under the Social Security Regulations.[13] The ALJ failed to apply the law, however, in determining the credibility of Kvach's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers nothing in terms of the *Polaski* factors and how those factors relate to Kvach's subjective testimony and credibility. The ALJ simply states that Kvach's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[14] As discussed in section *V.B.1*, the ALJ failed to fully and fairly develop the record with regard to Dr. Kappos' opinions, particularly how Dr. Kappos' opinions relate to Kvach's RFC. Thus, the Court finds the ALJ's reliance on his RFC assessment for Kvach to be inadequate for supporting his credibility finding.

Because the ALJ's decision lacks any discussion of the reasons for discrediting Kvach, except that his allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that

---

[13] *See* Administrative Record at 13-14.

[14] *Id.* at 14.

remand is appropriate for the ALJ to further develop the record with regard to Kvach's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Kvach's subjective allegations to be credible or not credible. If on remand, the ALJ finds Kvach's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Kvach's subjective allegations and the evidence in the record.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to Dr. Kappos' opinions, and how Dr. Kappos' opinions relate to Kvach's

RFC; and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## *VI. CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Kvach's sitting, standing, and walking limitations, especially as they relate to Dr. Kappos' opinions and Kvach's RFC. The ALJ must also consider all of the evidence relating to Kvach's subjective allegations of pain and disability, address his reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Kvach's credibility.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this  28ᵗʰ  day of February, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA